IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF OHIO
WESTERN DIVISION

**ROBERT G. WAGNER,**      Case No. 3:16 CV 2046

    Plaintiff,      Judge Jack Zouhary

    v.      Magistrate Judge James R. Knepp, II

**NEIL TURNER, et al.,**

    Defendants.      REPORT AND RECOMMENDATION

## INTRODUCTION

On August 15, 2016, Plaintiff Robert G. Wagner ("Plaintiff"), *pro se*, filed a complaint alleging deliberate indifference to his serious medical needs against multiple defendants,[1] all of whom have been terminated except remaining Defendants Neil Turner, Deputy Warden Boyd, Deputy Warden Joyce, Vickie Donahue, Kevin Woods, and Lorri Shuler ("Defendants"). (Doc. 1). Jurisdiction is proper under 28 U.S.C. § 1331. This case has been referred to the undersigned for general pretrial supervision by the district court. (Non-document entry dated November 14, 2016).

Pending before the Court are Plaintiff's Motion for Liability and Damages (Doc. 37)[2], and Defendants' Motion for Summary Judgment (Doc. 39), to which Plaintiff filed an opposition (Doc. 40). For the reasons stated below, the undersigned recommends Plaintiff's motion (Doc. 37), be

---

1. In addition to the remaining Defendants, initial Defendants included Mr. May, Norm Hill, Ms. Bow, and Ms. Tear. These parties were dismissed without prejudice on October 18, 2016 because their full names and whereabouts were unknown. *See* Doc. 3.

2. The Court interprets Plaintiff's motion as one for summary judgment.

denied, and Defendants' motion (Doc. 39) be granted in its entirety and the case dismissed with prejudice.

## BACKGROUND

At all times relevant to this case, Plaintiff was in the custody of the Ohio Department of Rehabilitation and Corrections, as an inmate at the North Central Correctional Complex (NCCC) in Marion, Ohio. (Doc. 1). Defendants are correctional and medical staff of the NCCC. *Id*. In his complaint, Plaintiff alleges—in essence—deliberate indifference to serious medical needs by these multiple defendants at his place of confinement. Plaintiff's Motion for Liability stems primarily from an incident in May 2016, where his sleep apnea machine was sent out for repairs and he was not given a loaner machine during that time. (Doc. 37, at 1).[3]

Plaintiff underwent a sleep study in June 2010, at the Ohio State University Sleep Telemedicine Clinic. (Doc. 39, at 13). Following the study, the treating physician recommended Plaintiff be placed on a machine. *Id*. Plaintiff was issued a machine in October 2010 by NCCC staff. *Id*. When it was issued, NCCC medical staff educated Plaintiff on proper usage and cleaning. *Id*.

On April 29, 2016 (Friday), Plaintiff brought his machine to the NCCC medical unit for cleaning and maintenance. (Doc. 1-2, at 24); (Doc. 39, at 14) (Affidavit of Vicki Donahue, R.N.). Monday morning, May 2, 2016, the machine was sent offsite to Wyandot Memorial Hospital in

---

3. In his complaint, Plaintiff also asserts claims about other pain complaints not being taken seriously by medical and correctional staff, as well as an incident on an unspecified date where he had food poisoning and was allegedly left on a bathroom floor for 24 hours, rather than being given medical treatment. (Doc. 1, at 7). Plaintiff does not raise these issues in his Motion for Liability, nor in his opposition to Defendants' motion. Issues averted to in a perfunctory manner are waived. *McPherson v. Kelsey*, 125 F.3d 989, 995-96 (6th Cir. 1997). Regardless, however, the rationale below would apply equally to Plaintiff's other claims of medical indifference.

Upper Sandusky, Ohio. (Doc. 1-2, at 94; Doc. 39, at 14). A loaner machine was not issued (Doc. 1-2, at 9-10), and Plaintiff was without a machine until his was returned to him on May 6, 2016. (Doc. 1-2, at 6; Doc. 39, at 14). When the machine came back, it had not been fixed or cleaned. (Doc. 1-1, at 9). NCCC ordered Plaintiff a new machine on May 16, 2016. (Doc. 1-2, at 24). He was issued the new machine on May 19, 2016. (Doc. 1-2, at 24; Doc. 39, at 14). On August 16, 2016, Plaintiff advised NCCC medical staff the new machine was not working properly. (Doc. 39, at 17). He was sent to Wyandot Hospital where the machine was examined by staff there who found Plaintiff was not using it properly. *Id.* Plaintiff was educated on how to use and properly clean the machine. *Id.*

Plaintiff alleges the prison intentionally delayed between the time he gave them the machine to send out for repairs and when it was actually sent. (Doc. 1-1, at 7). He states a doctor told him the hoses on the machine should be replaced on a certain schedule and the prison has not done so. (Doc. 1-1 at 12; Doc. 1-2, at 5, 51-52).

Though Plaintiff's Complaint does not articulate specific injuries resulting from Defendants' alleged indifference, in his Motion for Liability Plaintiff alleges he was placed in fear of dying in his sleep due to the absence of his machine. (Doc. 37, at 3). Further, due to a lack of oxygen with the machine's absence, Plaintiff alleges he lost brain cells and memory issues resulted. *Id.* He also asserts a fear that he may have to go without the machine in the future if it needs to be fixed or cleaned. *Id.* at 4.

The discovery deadline in this case was January 8, 2018. *See* Doc. 24. Plaintiff's expert disclosure and reports were due November 1, 2017. (Doc. 24). Plaintiff did not disclose any experts.

**MOTION FOR SUMMARY JUDGMENT STANDARD OF REVIEW**

Pursuant to Federal Civil Rule 56(c), summary judgment is appropriate where there is "no genuine issue as to any material fact" and "the moving party is entitled to judgment as a matter of law." When considering a motion for summary judgment, the Court must draw all inferences from the record in the light most favorable to the nonmoving party. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986). The Court is not permitted to weigh the evidence or determine the truth of any matter in dispute; rather, the Court determines only whether the case contains sufficient evidence from which a jury could reasonably find for the nonmoving party. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248-49 (1986). The moving party bears the burden of proof. *Celotex Corp. v. Catrett*, 477 U.S. 317, 325 (1986). This burden "may be discharged by 'showing'—that is, pointing out to the district court—that there is an absence of evidence to support the nonmoving party's case." *Id*. Further, the nonmoving party has an affirmative duty to direct the court's attention to those specific portions of the record upon which it seeks to rely to create a genuine issue of material fact. *See* Fed R. Civ. P. 56(c)(3) (noting that the court "need consider only the cited materials").

**DISCUSSION**

Defendants argue Plaintiff's *prima facie* case for deliberate indifference to a serious medical condition fails because he failed to produce a medical expert. (Doc. 39, at 1). Plaintiff responds that expert evidence is required "to establish the standard of care unless the issue is one that is within the common knowledge of lay people." (Doc. 40, at 1) (citing *Fitzgerald v. Corr. Corp. of Am.*, 403 F.3d 1134, 1145 (10th Cir. 2005) for the proposition that "plaintiff was not

4

required to produce evidence to defend a summary judgment motion where defendant's evidence was completely inadequate to support the motion")[4].

"[D]eliberate indifference to serious medical needs of prisoners" violates the Eighth Amendment. *Estelle v. Gamble,* 429 U.S. 97, 104 (1976). To succeed on such a claim, a plaintiff must show: 1) he had a serious medical need; and 2) a defendant was aware of that need, and acted with deliberate indifference to it. *Id.* A plaintiff must show the defendants had a "sufficiently culpable state of mind," *Wilson v. Seiter,* 501 U.S. 294, 297 (1991), to deny or purposely delay medical care or intentionally interfere with prescribed medical treatment, *Estelle,* 429 U.S. at 104-05. There is an objective and a subjective component. Objectively, a plaintiff must show "the seriousness of a prisoner's need[ ] for medical care is obvious even to a lay person." *Blackmore v. Kalamazoo Cty.,* 390 F.3d 890, 899 (6th Cir. 2004). However, in the case of "minor maladies or non-obvious complaints of a serious need for medical care," *id. at* 898, the plaintiff must "place verifying medical evidence in the record to establish the detrimental effect of the delay in medical treatment". *Napier v. Madison Cty., Ky.,* 238 F.3d 739, 742 (6th Cir. 2001) (internal citation omitted). Subjectively, "the plaintiff must allege facts which, if true, would show that the official being sued subjectively perceived facts from which to infer substantial risk to the prisoner, that he did in fact draw the inference, and that he then disregarded that risk." *Comstock v. McCrary,* 273 F.3d 693, 703 (6th Cir. 2001). Importantly, to support a constitutional claim of deliberate indifference under the Eighth Amendment, a plaintiff must show more than mere negligence. *Farmer v. Brennan,* 511 U.S. 825, 860 (1994); *see also Estelle,* 429 U.S. at 106 ("[A] complaint

---

4. The passage Plaintiff cites from the (non-binding) Tenth Circuit case of *Fitzgerald* addresses Oklahoma medical negligence law and is not applicable here.

that a physician has been negligent in diagnosing or treating a medical condition does not state a valid claim of medical mistreatment under the Eighth Amendment.").

Generally, deliberate indifference must be demonstrated with medical expert testimony. *King v. Alexander*, 574 F. App'x 603, 606 (6th Cir. 2014). In limited circumstances, however, deliberate indifference can be established without expert testimony that delayed treatment "worsened or deteriorated" the medical condition, where an injury is readily apparent to a lay person. *Blackmore*, 390 F.3d at 899-900. In *Blackmore*, however, the plaintiff did not receive *any* medical treatment for several days despite repeated complaints of sharp abdominal pain. *Id.* at 896. As it turned out, the pains were due to a ruptured appendix. *Id*. The Sixth Circuit has since made clear that the ruling in *Blackmore* is an exception to the general rule requiring medical expert proof to substantiate an Eighth Amendment medical indifference claim. *Compare Blackmore*, 390 F.3d at 899-900 (allowing medical indifference claim without medical proof where Plaintiff was in obvious distress and did not receive *any* medical treatment "within a reasonable timeframe") *with King*, 574 F. App'x at 606 (granting summary judgment to defendants for a medical indifference claim where the plaintiff received medical treatment and did not offer medical expert testimony to establish a causal link between her injury and the alleged inadequacy of her treatment, and noting that even if it excused the absence of medical expert testimony, her claim still failed because her "sole evidence [was] a self-generated affidavit"), *and Santiago v. Ringle*, 734 F.3d 585, 591 (6th Cir. 2013) (dismissing a medical indifference claim where there was no medical expert testimony because when "a claim [is] based on the prison's failure to treat a condition adequately, 'medical proof is necessary to assess whether the delay caused a serious medical injury.'" (quoting *Blackmore*, 390 F.3d at 898)).

6

Within the complaint, his motion, and his opposition to Defendants' motion, Plaintiff does not suggest he was denied medical treatment, rather he asserts the medical treatment he received was inadequate and untimely. He briefly alleges he suffered anxiety and memory loss due to the absence of his machine. (Doc. 37, at 288-90). Plaintiff points to memory loss as a symptom of lost brain cells, which he alleges resulted from the lack of oxygen in the machine's absence. *Id*.

It is undisputed that Plaintiff received medical treatment in this case, in that his machine was sent out for repairs and ultimately replaced. However, Plaintiff has not shown evidence his memory loss and anxiety were obvious to a lay person. Plaintiff was examined on more than one occasion by Defendant medical practitioners, and Plaintiff's concerns regarding the maintenance of his machine were addressed by medical personnel – albeit not necessarily to his satisfaction or in the timeframe he asserts was appropriate. *See Graham ex rel. Estate of Graham v. Cty. of Washtenaw*, 358 F.3d 377, 385 (6th Cir. 2004) ("'[w]here a prisoner has received some medical attention and the dispute is over the adequacy of the treatment, federal courts are generally reluctant to second guess medical judgments and to constitutionalize claims that sound in state tort law.'") (quoting *Westlake v. Lucas*, 537 F.2d 857, 860, n.5 (6th Cir. 1976)). Further, Defendants point out that Plaintiff was given an entirely new machine in May 2016, and when he advised NCCC medical staff the new machine was not working properly, Plaintiff was sent to Wyandot Hospital where the machine was examined by staff there who found Plaintiff was not using it properly. (Doc. 39, Ex. A, at 309). Plaintiff was educated on how to use and properly clean the machine. *Id*.

Plaintiff has not provided any evidence to show a causal link between the delays in fixing or cleaning his machine, and the non-obvious injuries he alleges. *See King*, 574 F. App'x at 606 (dismissing medical indifference claims where the plaintiff did receive medical treatment, but not

7

the specific type he requested, and there was a lack of "medical expert testimony to establish a causal link between the loss of her little finger and the alleged inadequacy of her treatment.") (citing *Santiago*, 734 F.3d at 591). In this case, an expert is necessary to link the chain of causation between memory loss and the temporary absence of a machine, or the fact that the machine was not cleaned. *See Blackmore*, 390 F.3d at 898 (medical proof is necessary to assess whether the delay caused a serious medical injury). And Plaintiff has not provided such expert evidence. This is fatal to his claim.

In his opposition to Defendants' Motion for Summary Judgment, Plaintiff acknowledges the need for an expert witness, but notes he cannot afford one. (Doc. 40, at 1-2). Although Plaintiff does not explicitly ask the Court to appoint an expert, the undersigned notes that even if he had, it would not be appropriate. Federal Rule of Civil Procedure 706(a) permits the appointment of an expert to aid the courts, but does not authorize the district court to provide a plaintiff with funds for an expert witness or to appoint such a witness on a plaintiff's behalf. *See Hannah v. United States,* 523 F.3d 597, 600 (5th Cir. 2008) (affirming district court's refusal to appoint expert witness for *pro se* prisoner alleging inadequate medical care). While the undersigned sympathizes with Plaintiff's financial situation, the purpose of a court-appointed expert is to assist the trier of fact, not to serve as an advocate. *Students of Cal. School for the Blind v. Honig,* 736 F.2d 538, 549 (9th Cir.1984) (citing Fed. R. Evid. 706), *vacated on other grounds,* 471 U.S. 148 (1985).[5] Thus, Plaintiff's inability to afford an expert cannot overcome summary judgment.

---

5. Similarly, the *in forma pauperis* statute, 28 U.S.C. § 1915, makes no provision for a court-appointed expert. *See Patel v. United States*, 399 F. App'x 355, 359 (10th Cir. 2010) ("the in forma pauperis statute makes no provision for litigation expenses other than the reproduction of the record nad transcripts."); *Boring v. Kozakiewicz*, 833 F.2d 468, 474 (3d Cir. 1987) ("The plaintiffs' dilemma in being unable to proceed in this damage suit because of the inability to pay for expert witnesses does not differ from that of nonprisoner claimants who face similar problems.").

**CONCLUSION AND RECOMMENDATION**

Upon review of the evidence and arguments, the Court finds there are no genuine issues of material fact and Defendants are entitled to summary judgment as a matter of law. Therefore, the undersigned recommends Plaintiff's Motion for Liability (Doc. 37) be denied, and Defendants' Motion for Summary Judgment (Doc. 39), be granted and the case dismissed with prejudice.

s/James R. Knepp II
United States Magistrate Judge

*ANY OBJECTIONS* to this Report and Recommendation must be filed with the Clerk of Court within fourteen days of service of this notice. Failure to file objections within the specified time WAIVES the right to appeal the Magistrate Judge's recommendation. *See United States v. Walters*, 638 F.2d 947 (6th Cir. 1981); *Thomas v. Arn*, 474 U.S. 140 (1985).